# EXHIBIT A

Signed Settlement Agreement

*U.S. ex rel. Landis v. Hospice Car of Kansas, LLC*
*Case No. 06-cv-02455-CM*

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"); Defendants Voyager HospiceCare, Inc. ("Voyager"), and Hospice Care of Kansas, LLC ("HCOK") (collectively, the "Defendants"); and Relator Beverly Landis (hereafter, collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. HCOK is a company organized under the laws of Kansas that provides hospice services. HCOK is a wholly owned subsidiary of Voyager. HCOK submits claims to the United States under three Medicare provider numbers, formerly identified as the following Online Survey Certification and Reporting ("OSCAR") numbers, 17-1542, 17-1553, 17-1556, and now associated with the following National Provider Identifier ("NPI") numbers, 1790833382, 1326196627, 1609924638.

B. On October 19, 2006, Beverly Landis filed a *qui tam* action in the United States District Court for the District of Kansas captioned *United States ex rel. Beverly Landis v. Hospice Care of Kansas, L.L.C.*, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b)(the "Civil Action"). Landis alleged that HCOK violated the False Claims Act by submitting to the United States claims for payment for hospice services for patients who did not qualify for the Medicare hospice benefit. The United States intervened in the Civil Action on February 26, 2010, and filed the United States' Complaint on June 30, 2010.

1

1. DB04/0812001.0005/6357643.1 CD04

C. The United States contends that Defendants knowingly submitted or caused to be submitted claims for payment to the Medicare Program ("Medicare"), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1.

D. The United States contends that it has certain civil claims against Defendants arising from the knowing submission of claims to Medicare, using HCOK's provider numbers (formerly identified as the following OSCAR numbers, 17-1542, 17-1553, 17-1556, and now associated with the following NPI numbers, 1790833382, 1326196627, 1609924638), for the Medicare hospice benefit for patients that did not meet the eligibility requirements for that benefit during the period from January 1, 2004, through December 31, 2008. Specifically, the government contends that Defendants engaged in certain business practices that contributed to claims being submitted for patients that did not have a terminal prognosis of six months or less if their disease ran its normal course, including (a) providing compensation to staff based on patient admissions and census, (b) placing pressure on staff to meet admissions and census targets, (c) adopting procedures that delayed and discouraged discharges of ineligible patients, (d) instructing staff to inaccurately or misleadingly document patients' medical conditions in the medical records, and (e) implementing an inadequate compliance program to review patients for hospice ineligibility. The conduct set forth in this paragraph is referred to as the Covered Conduct.

E. The Agreement is not a concession by the United States that its claims are not well-founded, and the Defendants do not admit liability and deny the contentions of the United States and the Relator as set forth herein and in the Civil Action.

F. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties reach a full and final settlement pursuant to the Terms and Conditions below:

## TERMS AND CONDITIONS

1. Defendants shall pay to the United States $6,100,000 (Settlement Amount) by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice no later than 7 business days after the Effective Date of this Agreement. Simple interest will be computed at an annual rate of 1.5% from February 24, 2012, until the date of payment.

2. Conditioned upon the United States receiving the Settlement Amount from Defendants and as soon as feasible after receipt, the United States shall pay $1,342,000 to Relator by electronic funds transfer pursuant to written instructions to be provided by Relator's counsel.

3. Defendants agree to pay Relator's attorneys' fees and costs ("Relator's Fees") pursuant to a separate agreement regarding Payment of Attorneys' Fees, Costs and Expenses to be executed simultaneously with the Settlement Agreement.

4. Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon Defendants' full payment of the Settlement Amount, the United States (on behalf of itself, its officers, agents, agencies, and departments) releases Defendants, their subsidiaries, and any present or former directors, officers, agents, and employees of such entities, from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil

3

Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and/or the common law theories of payment by mistake, unjust enrichment, and fraud

5. OIG-HHS expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against Defendants and/or their officers, directors, and employees from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320a-7(b) or 42 U.S.C. § 1320a-7a (permissive exclusion).

6. Conditioned upon Defendants' full payment of the Settlement Amount and Relator's Fees, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Defendants, their subsidiaries, and any present or former directors, officers, agents, and employees of such entities, from any and all claims asserted and un-asserted, known and unknown, based upon any fact, transaction, or incident occurring prior to the Effective Date of this Agreement, and including but not limited to any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; any other claims Relator has asserted in Relator's Complaint; any claims arising from the filing of the Civil Action; and any claims Relator might assert under 31 U.S.C. § 3730(d) for expenses, attorney's fees and costs incurred in connection with the Civil Action.

7. Notwithstanding the releases given in paragraphs 4 and 6 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

      a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.    Any criminal liability;

      c.    Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

      d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; or

      e.    Any liability based upon obligations created by this Agreement.

8.    Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). In connection with this Agreement and this Civil Action, Relator and her heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relator from sharing in the proceeds of this Agreement. Moreover, the United States and Relator and her heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relator should receive of any proceeds of the settlement of her claim, and that an agreement concerning Relator share has been reached, pending the United States' formal approval.

5

9. Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases Defendants, their subsidiaries, and any present or former directors, officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

10. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12. Defendants fully and finally release the Relator from any claims (including attorneys' fees, costs and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the allegations in the Civil Action and the Relator's investigation and prosecution thereof.

6

13. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

14. Defendants agree to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees

7

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter, referred to as "Unallowable Costs").

  b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

  c. Treatment of Unallowable Costs Previously Submitted for Payment: Defendants further agree that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs

on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

        d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 16 (waiver for beneficiaries paragraph), below.

16.    Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

17.    Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal with prejudice of the Civil Action pursuant to Rule 41(a)(1).

18.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

20.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Kansas. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

21.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

22.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

23.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.     This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

25.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

26.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

25. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

26. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

27. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles or emails enclosing signature pages shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 6/6/12   BY: _____
                    Jonathan I. Katz
                    Trial Attorney
                    Commercial Litigation Branch
                    Civil Division
                    United States Department of Justice

DATED: 6/5/12   BY: _____
                    Jon P. Fleenor
                    Assistant United States Attorney
                    United States Attorney's Office
                    District of Kansas

11

27. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles or emails enclosing signature pages shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: _____   BY: _____
Jonathan I. Katz
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: _____   BY: _____
Jon P. Fleenor
Assistant United States Attorney
United States Attorney's Office
District of Kansas

DATED: 6/4/12   BY: _____
Gregory E. Demske
Chief Counsel
Office of Counsel to the
 Inspector General
Office of Inspector General
United States Department of
 Health and Human Services

11

## DEFENDANTS - VOYAGER HOSPICECARE, INC. AND HOSPICE CARE OF KANSAS, LLC

DATED: 05-01-12      BY: ___[signature]___
                          Voyager HospiceCare, Inc. and Hospice Care of
                          Kansas, LLC Representative

DATED:_____     BY: _____
                          Lynn D. Preheim, KS#13300
                          STINSON MORRISON HECKER LLP

DATED:_____     BY: _____
                          Thomas C. Fox (admitted *pro hac vice*)
                          REED SMITH LLP

## RELATOR - BEVERLY LANDIS

DATED:_____     BY: _____
                          Beverly Landis

DATED:_____     BY: _____
                          Joseph J. Roper
                          Counsel for Beverly Landis

12

## DEFENDANTS - VOYAGER HOSPICECARE, INC. AND HOSPICE CARE OF KANSAS, LLC

DATED:_____   BY: _____
                         Voyager HospiceCare, Inc. and Hospice Care of
                         Kansas, LLC Representative

DATED: 6/4/12        BY: _____
                         Lyan D. Preheim, KS#13300
                         STINSON MORRISON HECKER LLP

DATED: 6/4/12.       BY: Thomas C. Fox
                         Thomas C. Fox (admitted *pro hac vice*)
                         REED SMITH LLP

## RELATOR - BEVERLY LANDIS

DATED:_____   BY: _____
                         Beverly Landis

DATED:_____   BY: _____
                         Joseph J. Roper
                         Counsel for Beverly Landis

12

## DEFENDANTS - VOYAGER HOSPICECARE, INC. AND HOSPICE CARE OF KANSAS, LLC

DATED:_____ BY: _____
Voyager HospiceCare, Inc. and Hospice Care of
Kansas, LLC Representative

DATED:_____ BY: _____
Lynn D. Preheim, KS#13300
STINSON MORRISON HECKER LLP

DATED:_____ BY: _____
Thomas C. Fox (admitted *pro hac vice*)
REED SMITH LLP

## RELATOR - BEVERLY LANDIS

DATED: 6/5/12   BY: *Beverly Landis*
Beverly Landis

DATED:_____ BY: _____
Joseph J. Roper
Counsel for Beverly Landis

12

1. DB04/0812001.0005/6357643.1 CD04

## DEFENDANTS - VOYAGER HOSPICECARE, INC. AND HOSPICE CARE OF KANSAS, LLC

DATED:_____  BY: _____
                      Voyager HospiceCare, Inc. and Hospice Care of
                      Kansas, LLC Representative

DATED:_____  BY: _____
                      Lynn D. Preheim, KS#13300
                      STINSON MORRISON HECKER LLP

DATED:_____  BY: _____
                      Thomas C. Fox (admitted *pro hac vice*)
                      REED SMITH LLP

## RELATOR - BEVERLY LANDIS

DATED:_____  BY: _____
                      Beverly Landis

DATED: 6/4/12      BY: *[signature]*
                      Joseph J. Roper
                      Counsel for Beverly Landis

12